## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **KENT LINDUFF** | § | **CASE NO. 19-20025** |
| Debtor. | § | **CHAPTER 7** |
| | § | |
| **EDWARD F. SIMPSON,** | § | |
| **INDIVIDUALLY AND AS TRUSTEE** | § | |
| **FOR THE JTS IRREVOCABLE** | § | |
| **INVESTMENT NOMINEE TRUST,** | § | |
| **JOAN T. SIMPSON,** | § | |
| **INDIVIDUALLY AND AS TRUSTEE** | § | |
| **FOR THE JTS INVESTMENT** | § | |
| **NOMINEE TRUST** | § | |
|     Plaintiffs. | § | |
| | § | |
| **v.** | § | **Adv. Pro. No. 19-_____** |
| | § | |
| **KENT LINDUFF** | § | |
|     Defendant. | § | |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT

TO THE HONORABLE DAVID R. JONES, CHIEF U.S. BANKRUPTCY JUDGE:

Edward F. Simpson, individually and as Trustee for the JTS Irrevocable Investment Nominee Trust and Joan T. Simpson, Individually and as Trustee for the JTS Investment Nominee Trust ("Plaintiffs" or "Simpsons"), creditors in the above-styled and numbered case, by and through their undersigned counsel, file their complaint against the Debtor, Kent Linduff ("Defendant" or "Linduff"),  and would allege as follows:

## I. INTRODUCTION

1.    Bankruptcy is a federally sanctioned haven for the honest, but unfortunate debtor. Kent Linduff is no such debtor.  Linduff concocted and carried out a scheme to defraud the

1

Simpsons out of approximately $1,500,000 by inducing them to invest in, and to keep investing in, a company that had none of the income, income prospects, business, or business prospects that Linduff asserted that it had.  Instead of using the investment funds to further the business that the Simpsons had invested in, ENDCO (the "Business" or "ENDCO"), Linduff siphoned off these investment funds to support his lavish lifestyle and/or to fund other ventures that did not benefit the Simpsons.  Linduff obtained money from the Simpsons by false pretenses and false representation; committed fraud and embezzlement while acting in a fiduciary capacity; and willfully and maliciously caused injury to the Simpsons' property, and the debt that he owes to the Simpsons as a result of his dishonest and unscrupulous actions should be deemed non-dischargeable.

## II. JURISDICTION

2.       On January 28, 2019 (the "Petition Date"), Linduff filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Petition"), 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), thus commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

3.       This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334.

4.       This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b), but to the extent it is determined that this Court does not have jurisdiction over any part of this matter or that any part of this matter does not constitute a core proceeding, the Simpsons consent to this Court hearing and determining this matter pursuant to 28 U.S.C. § 157(c)(2).

5.       Venue is proper under 28 U.S.C. § 1409.

2

### III.  PARTIES

6.     Plaintiff Edward Simpson is an individual residing in the State of Massachusetts.

7.     Plaintiff Joan T. Simpson is an individual residing in the State of Massachusetts.

8.     Defendant Kent D. Linduff (also herein, "Linduff") is an individual residing in the State of Texas and may be served with process at his home address at 155 Mustang Royale, Port Aransas, TX 78373, or 118 Park Ridge, Boerne, TX 78006 or his business address at 1 FM 3351 South, Suite 135, Boerne, TX 78006.

### IV.  PROCEDURAL BACKGROUND

9.     Linduff initiated his Bankruptcy Case on the Petition Date.

10.    Catherine Stone Curtis has been appointed as the Chapter 7 Trustee.

11.    Linduff did not appear at the meeting of creditors on March 20, 2019 in proper prosecution of his case.

12.    The meeting was rescheduled for March 22, 2019 and it is unclear from the Docket whether Linduff appeared at, and whether the Trustee concluded a meeting of creditors.

13.    The deadline to object to the Debtor's dischargeability of debt is May 20, 2019. This Complaint is thus timely.

14.    As set forth in the Simpson Claim, as of the Petition Date, Linduff owed the Simpsons the approximate total amount of $1,499,022.28.

15.    Linduff has failed to list the Simpsons on his Schedule F, which is sworn to under penalty of perjury [Docket No. 15, Case No. 19-20025]  and despite the lawsuit that was pending against him by the Simpsons on the Petition Date; the Simpsons only recently discovered the fact of the pendency of this bankruptcy case.

3

## V. <u>FACTS</u>

16.     During February 2010, the Simpsons long-time friend, Gary Frashier, introduced them to the Defendant who was looking for investors in his business ENDCO.  ENDCO was created for the purpose of developing and marketing software and other technology to insurance companies in exchange for licensing and processing fees.

17.     After meeting with the Defendant and his wife, Linda Linduff, (collectively, the "<u>Linduffs</u>" and the "<u>Linduff Defendants</u>") in Boerne, Texas and hearing their pitch about ENDCO's potential success, the Simpsons became interested in learning more about ENDCO and becoming investors.

18.     On February 25, 2010, Defendant Kent Linduff sent the following email message to current and prospective investors, including the Simpsons, stating in pertinent part:

> The Cartera Group signed our contract yesterday….this will insure we are an industry leader for years to come. This group has controlling interest over 500K employees/contractors. The minimum income contractually guaranteed to us is over $18 million dollars……reality is we will generate significantly more than that.

*See* **Exhibit A.**

19.     Although this later turned out to be pure fabrication and blatantly false, after seeing this correspondence and receiving other representations from Linduff, the Simpsons decided to invest.  The Simpsons did not realize at this time that the Linduff Defendants owned at least 50% of The Cartera Group, so this new contract that Linduff was touting was really just one Linduff company (ENDCO) signing a contract with another Linduff company (The Cartera Group).  Had the Simpsons known this at the time, they never would have invested in the Linduffs or any of their entities.  Nevertheless, because of the Defendant's misrepresentations, they were duped into believing in the financial potential of his business ventures.

20.     The Simpsons' first investment in ENDCO was made on March 1, 2010, in the amount of $210,000.00 pursuant to a Stock Purchase Agreement, of same date (**Exhibit B**), which was entered into between EmployerNow Development Co., Inc. (ENDCO's predecessor entity), as seller, and Mrs. Simpson as Trustee of the JTS Investment Nominee Trust, as buyer of 30,000 shares of ENDCO stock.

21.     Additionally, in early 2011, the Defendant convinced the Simpsons to invest in one of his other entities, Cartera, which later became The Cartera Group, LLC.

22.     Cartera was a separate company from ENDCO, and it was set up to market insurance products to low-cost insurance buyers with ENDCO processing the business with intention that both Cartera and ENDCO would benefit.   The Defendant required that any investments the Simpsons made in Cartera be wire-transferred directly to the Defendant's personal bank account.

23.     Thus, the Simpsons made the following investments in Cartera during 2011:

| March 16, 2011 | $15,000 |
|---|---|
| May 2, 2011 | $100,000 |
| June 13, 2011 | $25,000 |

*See* Ex. C.

24.     Throughout 2012, the Defendant began to argue with some of the ENDCO investors over issues such as managing the business, the need for professional management, and accounting of invested funds.   One of these investors was Gary Frashier, who decided he

wanted out of ENDCO and approached Mr. Simpson about selling his ENDCO shares to Mr. Simpson at a discount.

25.     Still believing in the Defendant's representations about all the money ENDCO was and would be making, the Simpsons decided to buy Frashier's ENDCO stock at a discount and increase their ownership interest in ENDCO by 31,759 shares plus (1) a note for $200,000 note from Frashier to ENDCO convertible to 40,000 shares of ENDCO stock, and (2) an option to purchase an additional 20,000 shares of ENDCO at $5.00 per share.  *See* Ex. D.

26.     Joan Simpson wired the final payment to Frashier for his ENDCO shares on March 21, 2013.  *See* Ex. E.

27.     By March 24, 2014, the Simpsons invested $903,022.28 and $30,000 more on April 3, 2014, in ENDCO based on the Defendant's continued propagations of ENDCO's status and potential to make millions of dollars in the insurance market.  Despite the significant opportunities ENDCO had to capitalize on its products, the Defendant always seemed to have an excuse about why these deals could not close.

28.     Nevertheless, around the same time period, the Defendant's pitches and representations brought in several more investors, including Mike Williams, William Harte, and Rex Sprunger (collectively, the "Williams/Harte Investors"), into the ENDCO fold.  The Williams/Harte investment was approximately $850,000 in return for ENDCO stock.

29.     Thereafter, the Williams/Harte investors introduced the Defendant to several significant business opportunities to sell ENDCO products, and they supported the Defendant's business trips in Texas, New Jersey, Pennsylvania, and Florida to meet with potential buyers and marketing companies.  In spite of these significant opportunities, the Defendant was never

6

able to close any of these deals. He made continuous excuses to the Simpsons, including stating that the customers were asking for too many changes in the software, or the customers were foolish and he could not deal with them, or the customers didn't know what they were doing.

30. After hearing the Defendant make excuse after excuse about not being able to market the ENDCO product as he promised, The Williams/Harte Investors concluded that the Defendant was only interested in getting new investors and not realizing potential opportunities to sell ENDCO products. The Williams/Harte Investors then decided to take legal action to get their investment back, and they met with Ed about joining them in a lawsuit against Linduff.

31. Having invested nearly a million dollars in ENDCO and another $200,000 in Cartera, and considering the Defendant's numerous statements to the Simpsons about valuing their relationship and promising never to financially hurt them, Mr. Simpson rejected the opportunity to join in the lawsuit, and instead, voiced his desire to give the product more time to sell.

32. Thus, the Williams/Harte Investors sued the Linduffs as well as the Simpsons for return of their investment. The Defendant continued to represent to the Simpsons that the business potential for ENDCO and Cartera was high, and that getting rid of Williams and Harte would help the business grow. Thus, the Simpsons, after reaching a settlement agreement with the Williams/Harte Investors, wired $310,000 to Williams, and the Linduffs. The Simpsons also signed a promissory note for the balance (the "Williams/Harte Note").

33. The Defendant continually assured the Simpsons that revenues from ENDCO would easily pay off the Williams/Harte Note. The revenue never came in, the Williams/Harte Note went into default, and the Williams/Harte litigation continued.

7

34.     During 2014, the Simpsons still very much believed in the ENDCO product and the Defendant's pitches and representations.  In fact, they believed so much that in October of 2014, they bought a home in Boerne, TX and moved there to help with the ENDCO businesses and The Cartera Group.  The Simpsons had to sell this house about a year later, taking a more than a $100,000 loss, when they began to discover that the Defendant's representations were not true.

35.     When the Defendant defaulted on the note payments to the Williams/Harte Investors, things took a turn for the worse.  At this point, the Simpsons' investments in ENDCO totaled approximately $1.3 million.

36.     During the Spring of 2015, on the verge of facing a judgement against the ENDCO entities, the Defendant represented to the Simpsons that he intended to sell ENDCO to company owned by Toney Chemienti, who, in the Defendant's words, was ready to buy the company for $4.2 million dollars.

37.     The Defendant told Mr. Simpson that in return for the money, Chemienti would own the ENDCO technology and ENDCO would retain the right to use it.  Plus, the Defendant and Simpson would each have a 10% ownership in the new entity that would be established. The Defendant also told Simpson that the money from Chemienti would be used in part to pay off the Williams/Harte Investors and the balance of the money would come to ENDCO. Notably, Linduff's story later changed.  He later stated that Chemienti would pay $2.3 million, with $1.3 million paid up front.  The Defendant stated that $1 million would be used to settle with Williams/Harte, the remaining $300,000 would flow to ENDCO, and Chemienti would pay the $1 million balance by the end of the year.

38.     The Defendant intentionally designed and made these representations to dupe the Simpsons into supporting the Williams/Harte settlement and signing the settlement documents, which included a purported release by the Simpsons of the Linduffs, ENDCO and the ENDCO Entities (the "Subject Release").  *See* Ex. F. The Subject Release provided:

> **E.    RELEASE BY SIMPSONS IN FAVOR OF LINDUFFS AND OTHER PARTIES.** Defendants, Edward F. Simpson and Joan T. Simspon on behalf of themselves and their predecessors, successors, assigns, and legal representatives, do hereby fully release and forever discharge Defendants, Kent D. Linduff and Linda P. Linduff and Other Parties, their agents, employees, attorneys, predecessors, successors, and all assigns from any Claims that they may have pled or could have been pled against Defendants, Kent D. Linduff and Linda P. Linduff or Other Parties relating to the subject matter of this Lawsuit or any other Claims that Defendants, Edward F. Simpson and Joan T. Simspon would or may have against Other Parties in the future.

39.     Although the Simpsons initially objected to the Subject Release, they ultimately agreed to sign it based on the Defendant's representations with respect to the sale to Chemienti, the funds that the sale would bring in, and the business interests that would come to the Simpsons when the sale was closed.[1]

40.     Nevertheless, the Simpsons now believe they understand why the Linduffs were so adamant about the Simpsons signing a release – the Linduffs likely wanted to protect themselves in the event anyone figured out that their business entities were a scheme designed to dupe investors.

---

[1] Notably, even though the Linduffs required the Simpsons to purportedly release all past and *future* claims against the Linduffs and their businesses, the expectations and actions of the parties were that the Simpsons would continue to be investors and owners of the same entities *after* the release was signed.  The Linduffs likely had no idea at the time that such circumstances would render the release void as a matter of Texas law.  What is more, the plain language of the Subject Release limits its relevance to the lawsuit underlying the settlement agreement containing the Subject Release.  The underlying lawsuit in that case was a breached promissory note that was due and payable to the Williams/Harte Investors, which has nothing to do with this case, and renders the Subject Release inapplicable to the instant matter.

9

41.    The Defendant's promises about Chemienti never came true, and the Simpsons now believe that if any money came into ENDCO during that time, it came from new investors that the Defendant defrauded, just like the Simpsons.

42.    In December 2015, Ed confronted the Defendant about the Chemienti promises and the fact that no ENDCO products had apparently been sold, and how it appeared to the Simpsons that ENDCO and the Linduff Defendants were living off of new investor money—not sales.

43.    The Simpsons believe that the Defendant lied to them about Chemienti money being used to pay for the Williams/Harte settlement as Linduff refused to answer Mr. Simpson's questions about when the balance of the money from Chemienti was coming in.  In fact, in one phone call, Linduff told Mr. Simpson to stop bothering him with foolish questions and hung up the phone.  At that point, the Simpsons knew they had been defrauded.

44.    At the end of 2015, the Simpsons had invested $1,309,022.28 in ENDCO and were approximately 40% owners of the company and its related entities.  The Simpsons had also invested $190,000 in The Cartera Group, and were 50%-interest owners in that company.

45.    On March 16, 2018, the Simpsons, through the undersigned counsel, exercised their rights as owners under the applicable provisions of the Texas Business Organizations Code and certain company agreements, requested to review and copy the books and records of The Cartera Group, ENDCO, and the ENDCO Entities.  *See* Exs. I & G.

46.    By correspondence dated March 23, 2018, the Defendant responded that he no longer owned any "…stock/shares nor any interest" in any of the ENDCO Entities despite

contrary information on file with the Texas Secretary of State, and further despite the Simpsons having received no prior notice of Linduff's abandonment of the ENDCO Entities.  *See* Ex. H.

47.     Neither of the Simpsons ever had access to the books and records of ENDCO and its related entities, and they trusted Linduff and relied upon his representations to use their investment dollars for the businesses in which they invested.  The Simpsons now believe that Linduff was never seriously interested in selling the ENDCO products and instead focused on bringing in new investors to keep the façade of the businesses going in order to obtain new investor monies to support his lavish lifestyle.

### VI.  NONDISCHARGEABILITY OF DEBT OWED TO THE SIMPSONS

48.     For the reasons stated above, the debt owed by the Defendant to the Simpsons is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

**A.     Count 1: Nondischargeability of Debt Owed to the Simpsons Pursuant to § 523(a)(2)(A)**

49.     The preceding paragraphs are hereby incorporated by reference as if fully set forth herein below.

50.     Section 523(a)(2)(A) of the Bankruptcy Code, provides as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (2)     for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>
>>> (A)     false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11

11 U.S.C. § 523(a)(2)(A).

51.     The debt that the Defendant owes to the Simpsons is non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code because the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

52.     Through false pretenses, false representations, and actual fraud, the Defendant obtained approximately $1.5 million from the Simpsons for purported investments in businesses.

53.     The Defendant falsely represented to the Simpsons the nature of ENDCO contracts, the value of the business, its potential for profit, and the extent of the Defendant's efforts to market the ENDCO products, among other things.

54.     The Defendant falsely represented to the Simpsons that ENDCO was contractually guaranteed to make $18,000,000.00 annually and likely much more.  Linduff made similar false representations continuously throughout the period of time in which the Simpsons were investing in ENDCO.  The Defendant's representations were central to the Simpsons' decisions to invest approximately $1,500,000.00 in ENDCO and other Defendant-owned or – controlled entities.

55.     The Defendant made these representations knowingly and intended for the Simpsons to rely on these false representations to induce the Simpsons investments.

56.     The Simpsons justifiably relied on the Defendant's false representations when they decided to make their investments in ENDCO and its related entities between 2010 and 2015.

12

57.     Through false pretenses or actual fraud, the Defendant represented to the Simpsons that there was a buyer committed to purchasing ENDCO for $4.2MM, which would resolve all of ENDCO's financial troubles.  This purchase was nothing more than another fraud perpetuated by the Defendant designed to keep the Simpsons moving forward with their own financial support of the Defendant and ENDCO.

58.     In reliance upon the Defendant's false representations, the Simpsons loaned money that it would not have loaned absent the Defendant's representations.   Thus, the Defendant's false representations directly and proximately caused injury to the Simpsons.

59.     Under 11 U.S.C. § 523(a)(2)(A), the Simpson Claim is nondischargeable because it represents a debt that the Defendant owes to the Simpsons as a result of the Defendant's false pretenses, false representations, and/or actual fraud.

60.     The Simpsons have suffered damages as a direct result of the Defendant's false pretenses, false representations and/or actual fraud in an amount no less than the Simpson Claim.

**B.     Count 2:     Nondischargeability of Debt Owed to the Simpsons Pursuant to § 523(a)(6)**

61.     The preceding paragraphs are hereby incorporated by reference as if fully set forth herein below.

62.     Section 523(a)(6) of the Bankruptcy Code, provides as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

63.     The Defendant willfully and maliciously injured the property of the Simpsons by siphoning off the Simpsons' investment money meant to benefit ENDCO and The Cartera Group and instead using the funds for his own personal benefit.

64.     The funds invested in ENDCO and The Cartera Group by the Simpsons were meant to be used to market and sell ENDCO's software products to end users.  The Defendant was never serious about actually selling ENDCO's products.  Instead, the Defendant was preoccupied with fraudulently inducing the Simpsons and others to invest in ENDCO so that he could continue to finance his lifestyle with their money.

65.     The funds that the Simpsons invested were not used for their intended purpose and the Defendant deployed false pretenses and lied to the Simpsons about the use of the funds and the financial health of the companies to induce further investment and thus, to perpetuate further fraud and further willful and malicious injury.

66.     Pursuant to 11 U.S.C. § 523(a)(6), the Simpson Claim is nondischargeable because it represents a debt for willful and malicious injury by the Defendant to the property (the investment money) of the Simpsons.

## VII. <u>PRAYER</u>

WHEREFORE, premises considered, for all of the reasons set forth herein, the Simpsons request that this Court determine that all amounts represented by the Simpson Claim are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); and grant to the Simpsons such other and further relief to which it is entitled.

Dated:  May [], 2019.

14

Respectfully submitted,

**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, TX 77010
(713) 752-4200 – Telephone
(713) 752-4221 – Facsimile

/s/ *Jennifer F. Wertz*
Matthew D. Cavenaugh
State Bar No. 24062656
(713) 752-4284 – Direct Dial
(713) 308-4184 – Direct Fax
Email: mcavenaugh@jw.com

Jennifer F. Wertz
State Bar No. 24082722
100 Congress Avenue, Suite 1100
Austin, TX 78701
(512) 236-2247 – direct dial
(512) 391-2147 – direct fax
Email: jwertz@jw.com

Matt Swantner
State Bar No. 24066169
112 E Pecan Street, Suite 2400
San Antonio, TX 78205
(210) 978-7782 – Direct Dial
(210) 242-4667 – Direct Fax
Email: mswantner@jw.com

**ATTORNEYS FOR EDWARD F. SIMPSON,
INDIVIDUALLY AND AS TRUSTEE FOR THE JTS
IRREVOCABLE INVESTMENT NOMINEE TRUST,
JOAN T. SIMPSON, INDIVIDUALLY AND AS
TRUSTEE FOR THE JTS INVESTMENT NOMINEE
TRUST**

**<u>Exhibit A</u>**

**February 25, 2010 Email Correspondence**

**joan simpson**

| | |
|---|---|
| **From:** | "Kent Linduff" <klinduff@employernow.com> |
| **To:** | "'John Sinclair'" <jsinclair@employernow.com>; "'Linda Linduff'" <llinduff@employernow.com>; "'Gary Frashier'" <gfrashier@aol.com>; <jsimpson103@comcast.net> |
| **Sent:** | Thursday, February 25, 2010 7:39 AM |
| **Attach:** | Cartera.jpg |
| **Subject:** | Cartera Group |

Team,

Well I must say I feel "different" this morning. After putting everything I have into this ....to see it blossom and bear fruit is a humbling experience.

The Cartera Group signed our contract yesterday....this will insure we are an industry leader for years to come. This group has controlling interest over 500K employees/contractors. The minimum income contractually guaranteed to us is over $18 million dollars......reality is we will generate significantly more than that.

Of course we have already signed NetBenefitsPlus and ODesk...so in the past 30-45 days we have signed well over $22 million dollars for ENDCO.....and we are just starting.

March will be even bigger for us.

If you are copied on this email you should join me in knowing you played a significant role in this success.

Thank you.

Attached is a simple working diagram that Joe Castillo put together reflecting the services his company/group will roll out to their employees. As you can see we are the glue that makes it all work. This project has been in the works for over 5 years as they searched globally for the "glue/technology" that met their requirements.......as Rudy Gonzalez (The family money "guy") said..."ENDCO was built just for us...there is no other solution out there....."

I agree with Mr. Gonzalez.

Best Regards,

*Kent Linduff*
EmployerNow Development Company Inc.
IMPORTANT: The information contained in this transmission is private and confidential. It is intended only for the recipient(s) named above. If you are not named above, then you have received this in error, and to review, distribute or copy this transmission or its attachments is strictly prohibited by federal law. If you have received this in error, please notify the sender by email or fax reply immediately. If you are the proper recipient, and this contains "Protected Health Information", you must abide by the rules of HIPAA and other privacy laws that apply.

## **Exhibit B**

**Stock Purchase Agreement**

## STOCK PURCHASE AGREEMENT

AGREEMENT dated March 1, 2010, between Joan T. Simpson, Trustee of the JTS Investment Nominee Trust, U/D/T dated February 12, 2007, P.O. Box 1129, Sagamore Beach, MA 02562 (the "Buyer"), and EMPLOYER NOW DEVELOPMENT CO. INC. (the "Company").

1.     Sale of Stock

The Buyer agrees to purchase and the Company agrees to sell to the Buyer 30,000 shares of newly issued common stock of the Company (the "Shares"), for a per share price of $7.00 per share or an aggregate purchase price of $210,000.00 (the "Purchase Price"), payable as hereinafter provided.

2.     Payment Terms

(a)     The Purchase Price shall be payable as follows:

(i)     $60,000.00 on execution of this Stock Purchase Agreement;

(ii)     $75,000.00 on or before April 15, 2010; and

(iii)     $75,000.00 on or before May 31, 2010.

The obligation to pay the balance of $150,000.00 referred to in Clauses (ii) and (iii) above shall be secured by the pledge of the Shares to the Company, which Shares shall be retained by the Company until all of the payments have been made in full.

3.     Representations of the Buyer

The Buyer hereby represents and warrants that:

1.     She is acquiring the Shares for the trust account shown above (and not for the account of others) for investment and not with a view to the distribution or resale thereof;

2.     She has had access to the same kind of information which would be available in a registration statement filed under the Securities Act of 1933, as amended (the "Act");

3.     She is an "accredited investor" as that term is defined in Regulation D promulgated under the Act;

4.     She understands that she may not sell or otherwise dispose of the Shares in the absence of either a registration statement under the Act or an exemption from the registration provisions of the Act;

4842331v.2

DRAFT 2/20/40

5.      The certificates representing the Shares may contain a legend to
the effect of paragraph 4 above as well as to the provisions set
forth immediately below.

4.      Disposition of Shares

The Buyer shall not dispose of any of the Shares to anyone other than to the
Company, except on the conditions set forth in this Agreement.  As used herein, the term
"dispose of" shall mean, pledge, hypothecate, give away, sell or otherwise transfer other than
pursuant to a plan of statutory merger or consolidation.

If the Buyer wishes to dispose of shares of Stock she shall give notice to the
Company of her desire to do so, which notice shall specify the number of shares she intends to
dispose of (the "Offered Shares").  The Company shall have the option to purchase all (but not
less than all) the Offered Shares at a negotiated price or the price at which the Shares are to be
sold to a third party, provided that the Company's notice of its election to purchase the Buyer's
Shares shall be given within 15 days after receipt of his notice.

5.      Miscellaneous

(a)      Notices.  Notices required or permitted to be given hereunder shall be in
writing and shall be delivered by hand or messenger or sent by registered or certified mail,
postage prepaid and return receipt requested or overnight courier addressed: (a) if to the
Company, to 309 Water Street, Boerne, Texas  78006, or (b) if to the Buyer, to its address set
forth in the introductory paragraph of this Agreement, or (c) in either case, at such other address
as may have been specified by written notice given in accordance with this paragraph.

(b)      Governing Law.  This Agreement shall be enforced, governed and
construed in all respect in accordance with the laws of the State of Texas.

(c)      Severability.  If any provision of this Agreement is invalid or
unenforceable under any applicable statute or rule of law, then such provision shall be deemed
inoperative to the extent that it may conflict therewith and shall be deemed modified to conform
with such statute or rule of law.  Any provision hereof that may prove invalid or unenforceable
under any law shall not affect the validity or enforceability of any other provision hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date
first above written.

Employer Now Development                          JTS Investment Nominee Trust
Company, Inc. (the "Company")


Kent Linduff, Chief Executive Officer              Joan T. Simpson, Trustee

2

4842331v.2

## <u>Exhibit C</u>

**Cartera Stock Purchase Agreement**

## STOCK PURCHASE AGREEMENT

AGREEMENT dated March 10, 2011, between Joan T. Simpson, Trustee of the JTS Investment Nominee Trust, U/D/T dated February 12, 2007, P.O. Box 1129, Sagamore Beach, MA 02562 or as such other Investment entity as is owned or to be formed by the Trustee (the "Buyer"), and CARTERA INC. (the "Company").

    1.    <u>Sale of Stock</u>

The Buyer agrees to purchase and the Company and or shareholders agrees to sell to the Buyer 20,000 shares of common stock of the Company (the "Shares"), for a per share price of $7.00 per share or an aggregate purchase price of $140,000.00 (the "Purchase Price"), with $15,000 down and the balance of $125,000 payable on or before April 30, 2011.

    2.    <u>Representations of the Buyer</u>

The Buyer hereby represents and warrants that:

1. She is acquiring the Shares for the trust account shown above (and not for the account of others) for investment and not with a view to the distribution or resale thereof;

2. She has had access to the same kind of information which would be available in a registration statement filed under the Securities Act of 1933, as amended (the "Act");

3. She is an "accredited investor" as that term is defined in Regulation D promulgated under the Act;

4. She understands that she may not sell or otherwise dispose of the Shares in the absence of either a registration statement under the Act or an exemption from the registration provisions of the Act;

5. The certificates representing the Shares may contain a legend to the effect of paragraph 4 above as well as to the provisions set forth immediately below.

    3.    <u>Disposition of Shares</u>

The Buyer shall not dispose of any of the Shares to anyone other than to the Company, except on the conditions set forth in this Agreement. As used herein, the term "dispose of" shall mean, pledge, hypothecate, give away, sell or otherwise transfer other than pursuant to a plan of statutory merger or consolidation.

If the Buyer wishes to dispose of shares of Stock she shall give notice to the Company of her desire to do so, which notice shall specify the number of shares she intends to dispose of (the "Offered Shares"). The Company shall have the option to purchase all (but not less than all) the Offered Shares at a negotiated price or the price at which the Shares are to be

4842331v.2

sold to a third party, provided that the Company's notice of its election to purchase the Buyer's Shares shall be given within 15 days after receipt of his notice.

4.    Miscellaneous

(a)    Notices.  Notices required or permitted to be given hereunder shall be in writing and shall be delivered by hand or messenger or sent by registered or certified mail, postage prepaid and return receipt requested or overnight courier addressed: (a) if to the Company, to 309 Water Street, Boerne, Texas  78006, or (b) if to the Buyer, to its address set forth in the introductory paragraph of this Agreement, or (c) in either case, at such other address as may have been specified by written notice given in accordance with this paragraph.

(b)    Governing Law.  This Agreement shall be enforced, governed and construed in all respect in accordance with the laws of the State of Texas.

(c)    Severability.  If any provision of this Agreement is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law.  Any provision hereof that may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision hereof.

(d) Buyer shall receive a $0.25 per program participating person (or family) per month override on all sales of products within Massachusetts, Rhode Island, New Hampshire, Vermont, Maine, Connecticut and New York.

(e) Payment to purchaser shall be made on a quarterly basis and paid in full for that period within 30 days of receipt of fees by seller of commissions from product providers.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

Cartera Inc. (the "Company")                    JTS Investment Nominee Trust

Kent Linduff                                    John T. Simpson, Trustee

4842331v.2

Sovereign Bank - Wire Transfer Agreement                                                    Page 1 of 2

 **Sovereign Bank**                                    **Wire Transfer Agreement**

Customer desires to arrange with Sovereign Bank for the transfer of the Customer's funds to the Customer's own accounts and to the accounts of third parties which Sovereign Bank is willing to do under the terms and conditions set forth below.

Application Number:_____                                                             Date:  3/16/2011

| Customer Information | |
|---|---|
| Name:    JTS MANAGEMENT LLC AND JOAN T SIMP | Originating Bank:    Sovereign Bank New England |
| Address:    10 AUTUMN WAY | Account Number: |
| City:    BOURNE | |
| State:    MA | Telephone Number:    (508)833-9060 |
| Zip:    02532 | |

**Wire Information**

U.S. Amount:    $15,000.00
Currency:    USD

**Beneficiary Information**

| | |
|---|---|
| Name:    KENT AND LINDA LINDUFF | Account Number: |
| Address:    118 PARK RIDGE | Reference: |
| City:    BOERNE | |
| State:    TX | |
| Zip:    78006 | |

**Beneficiary Bank Information**

| | |
|---|---|
| Name:    WELLS FARGO | ABA Number: |
| Address:    205 W BANDARA RD | |
| City:    BOERNE | |
| State:    TX | |
| Zip:    78006 | |
| | Other Code: |

**CBO/Department Information**

| | |
|---|---|
| CBO/ Department Name:    CEDARVILLE | CBO/Department Cost Center:    568 |
| Team Member Name:    Jovina E Gomes | Telephone Number:    (508)833-0100 |
| Team Member Login:    JGomes | Authorized Team Member Number:    060994 |

**Customer Identification**

| | |
|---|---|
| Primary:    MADL_____ EXP. 08/07/2014 | Secondary:    VISA 09/2013 |
| | Date of Birth: |

The Customer affirms that he/she has fully read and agrees to the terms of this Agreement including, but not limited to, the Terms and Conditions set forth on the reverse hereof. If the undersigned is executing this Agreement on behalf of the Customer, the undersigned represents and warrants to Sovereign Bank that this Agreement is authorized by the Customer.

Customer's Signature:_____    Print Name:_____

Title(if applicable):_____    Team Member Signature:_____

**Eastern Bank**

Wire Request Page 1 of 1

## OUTGOING WIRE TRANSFER REQUEST FORM

| **Date:** | | **FX Contract Details (deal no., currency, rate, etc):** |
|---|---|---|
| **Account Type:** | ☒ Business ☐ Personal | |
| ☐ Recurring Number: _____ | | ☐ Drawdown Request _____ |

| **A M O U N T** For wires in US Dollars, provide US Dollar amount | | **A M O U N T** For wires in foreign currency, provide **EITHER** the foreign amount and the currency **OR** the currency and US Dollar equivalent you wish to send: | | |
|---|---|---|---|---|
| **US DOLLAR AMOUNT** $ 100,000.00 | | **FOREIGN AMOUNT** | **CURRENCY** | **US DOLLAR EQUIVALENT** |

| **Requester/Acct Name:** 161 commercial street investment nominee | **Debit A/C or G/L No.** ▓▓▓▓▓ |
|---|---|
| **Street Address:** 10 autumn way | **Original Debit A/C No.** |
| **City, State, Zip:** Bourne, MA 02532 | |

| **P A Y M E N T   I N S T R U C T I O N S** | Receiving Bank Name: Wells Fargo |
|---|---|
| | Receiving Bank Street Address: 205 W Bandara Rd |
| | Receiving Bank City, State Zip, Country: Boerne, TX 78006 |
| | ABA Routing No.: ▓▓▓▓▓  |  SWIFT code: |
| | Additional Bank Info (Clabe, sort code, etc.): |
| | Beneficiary Bank/Intermediary Bank: (only if different from receiving bank) |
| | Beneficiary /Intermediary Bank A/C No: |
| | Beneficiary Bank Street Address: |
| | Beneficiary Bank City, State, Zip, Country: |
| | Beneficiary Account No. (OR IBAN): ▓▓▓▓▓ |
| | Beneficiary Name:   Kent and Linda Linduff |
| | Beneficiary Street Address:     118 Park Ridge |
| | Beneficiary City, State, Zip, Country: Boerne, TX 78006 |
| | Payment Details: |
| | Payment Details: |
| | Payment Details: |
| | Bank-to-Bank Info: |
| | Bank-to-Bank Info: |
| | Bank-to-Bank Info: |

| Prepared By:  Kirby Holmes | Date: 5/2/2011  Time: |
|---|---|
| Person to Call for PIN auth:  Kirby Holmes | Phone/ Extn: 12720 |
| Signature/s (authorized Signatory/ies on account): *Jim Simpson, Jr.* | Branch/Dept/ Customer: 127 ID Accepted: |
| Bank use only: Confirmed with:  SANDY | Date/Time:  5/2/11     9:42 |

**Wire Department Fax:  781-596-4544**

**Non-wire room info:**

**Disclaimer:** Eastern Bank cannot guarantee settlement date to the final beneficiary.

EBWTD8WRF – v062510

EASTERN BANK        *FUNDS TRANSFER NOTIFICATION*        <u>05-02-2011</u>

161 COMMERCIAL STREET INV.
JOAN T SIMPSON TE
PO BOX 1129
SAGAMORE BEACH , MA, 02562-

Dear 161 COMMERCIAL STREET INV.:

In accordance with your instructions, your Eastern Bank account
**********2293 has been debited on 05/02/2011 for an Outgoing
Wire Transfer as detailed below. Please note any fees that may
have been assessed to the account and adjust your records accordingly.

Sender Information:

By Order of:       161 COMMERCIAL STREET INV.
Sender Bank:       EASTERN BANK
Sender ABA:       ███████████
Senders Reference:       0050
Receiver Bank:       WELLS FARGO NA
Receiver ABA:       ███████████
Beneficiary Bank:
FRB Reference #:       ████████████████████

Beneficiary:       KENT AND LINDA LINDUFF
Beneficiary Account:   **********3516
Amount:       $100,000.00

Additional Information (If Applicable):

Should you have any questions, please contact Eastern
Bank Customer Service at 1-800-327-8376.

*EASTERN BANK*                    *FUNDS TRANSFER NOTIFICATION*                    *06-14-2011*

161 COMMERCIAL STREET INV.
JOAN T SIMPSON TE
PO BOX 1129
SAGAMORE BEACH , MA, 02562-


Dear 161 COMMERCIAL STREET INV.:


In accordance with your instructions, your Eastern Bank account
**********2293 has been debited on 06/14/2011 for an Outgoing
Wire Transfer as detailed below. Please note any fees that may
have been assessed to the account and adjust your records accordingly.


Sender Information:

By Order of:        161 COMMERCIAL STREET INV.
Sender Bank:        EASTERN BANK
Sender ABA:         █████████████
Senders Reference:  0073
Receiver Bank:      WELLS FARGO NA
Receiver ABA:       ██████████████
Beneficiary Bank:
FRB Reference #:    ████████████████████████

Beneficiary:        KENT AND LINDA LINDUFF
Beneficiary Account:  **********3516
Amount:             $25,000.00

Additional Information (If Applicable):


Should you have any questions, please contact Eastern
Bank Customer Service at 1-800-327-8376.

**Exhibit D**

**ENDCO Transaction Documents**

CONVERTIBLE LOAN AGREEMENT

This CONVERTIBLE LOAN AGREEMENT dated January 25, 2010 is entered into between Employer Now Development Company (ENDCO), Kent Linduff (Linduff) and Gary E. Frashier (Frashier).

Kent Linduff is the Founder and principal shareholder, together with his spouse, Linda Linduff, and Linduff also serves as the Chief Executive Officer of ENDCO. Gary Frashier is a consultant to ENDCO, an active investor currently owning five percent (5.0%) of the common stock of ENDCO, and a member of the ENDCO Board of Directors.

Frashier agrees to loan $200,000.00 in cash to ENDCO, and ENDCO wishes to enter into this Convertible Loan Agreement with Frashier on the following terms:

1. The loan will have a maturity term of one year from the date of signing and shall have an interest rate of 6.50% per annum. The interest shall accrue daily and shall be compounded annually if not paid on time.

2. Frashier shall receive a non-qualified stock option grant to purchase $100,000.00 worth of of ENDCO Common Stock at an exercise price of $5.00 per share, in recognition of making the loan. The stock option is hereby granted as of the date of this Agreement and will vest immediately, and will be valid for a period of ten (10) years from the date of grant.

3. If this convertible loan is not repaid by the maturity date of Janury 25, 2011 or earlier, Frashier shall have the right, but not the obligation, to convert all or any portion of the principal of $200,000.00 plus any accrued interest into the common stock of ENDCO at a conversion price of $5.00 per share.

4. This Agreement shall be binding on any successor to ENDCO, and on the estate, spouse or heirs of Frashier and Linduff.

5. Any dispute shall be settled by binding arbitration by an experienced arbitrator jointly selected by Frashier and ENDCO, or their authorized representatives.

6. This Agreement shall be interpeted according to the laws of the State of Texas.

7. The above constitutes the entire Agreement between the parties and it may only be modified in writing by all the parties.

Signed, this 25th day of January, 2010 by:

ENDCO, by Kent Linduff
Chief Executive Officer

Kent Linduff

Gary E. Frashier

STOCK PURCHASE AGREEMENT AND

PROMISSORY NOTE

In consideration of One Hundred ($100.00) Dollars and a Promissory Note dated December 27, 2012 ,

In the amount of Ninety Nine Thousand Nine Hundred  ($99,900.00) Dollars the receipt of which is

hereby acknowledged we Edward F. Simpson and Joan T. Simpson of Bourne, MA do hereby promise to

pay to the order of Gary E. Frashier of Boerne, TX , the sum of Ninety Nine Thousand Nine Hundred

($99,900.00) Dollars  on or within Ninety (90) days from todays date with interest at the rate of six

and one half (6.5%) per cent per annum, payable monthly in arrears for the payment of the stock listed
below:

31,579 Shares of Employer Now Development Company (Endco)

The Parties agree that upon payment in full of the aforesaid note and any accrued interest that Gary

E. Frashier will assign the above detailed stock to Edward F. Simpson or his assigns.

Signed this 27th day of December, 2012

Edward F. Simpson

Joan T. Simpson

Gary E. Frashier

AGREEMENT

This Agreement made this 27th day of December, 2012, between Joan T, Simpson and Edward F. Simpson of Bourne, MA and Gary E. Frashier of Boerne, TX in which a Convertible Loan Agreement dated January 25, 2010, between Endco, Kent Linduff and Gary E. Frashier shall be assigned to the Simpsons or their assigns by payment of Two Hundred Thousand ($200,000.00) Dollars on or within Ninety (90) days from todays date with interest on said principal at the annual interest rate of six and one half per cent (6.5%).

Upon payment of the aforesaid principal and interest the $200,000 note and convertible loan agreement shall be assigned to the Simpsons or their assigns.

Signed this 27th day of December, 2012.

_____
Edward F. Simpson

_____
Joan T. Simpson

_____
Gary E. Frashier

From: **Gary Frashler** glcashier@aol.com
Subject: Re: A Question
Date: March 19, 2013, 7:08 PM
To: Edward Simpson edwardfsimpson@gmail.com

Thanks, Ed and Joan.  Appreciate it much!

Best, Gary

Sent from my iPhone

On Mar 19, 2013, at 1:54 PM, Edward Simpson <edwardfsimpson@gmail.com> wrote:

> Hi Gary
> Joan just signed the papers to wire to you tomorrow am as we agreed
> $250,000 with the balance of $50,000 to be paid on or before April 30,2013
> Really appreciate your working with us on this.
> Hopefully with everything that we have going on it should be cleared
> before the end of this month
> Ed
>
> On Mon, Mar 18, 2013 at 4:40 PM, Gary Frashier <glfrashier@aol.com> wrote:
>> Ed,
>>
>> I'm not trying to push you in any way, but I am just trying to work our some
>> cash flow planning - because I have a very large estimated tax payment that
>> I have to make before we leave on our cruise on April 1st.  This was due to
>> my exercise of Merrimack options as I am holding most of the stock for a
>> longer term sale. Do you know about when the electronic transfer will take
>> place?
>>
>> Best,  Gary
>> Gary Frashier

From: **Gary Frashier** gfrashier@aol.com
Subject: Confirmation of our Agreement to Sell my ENDCO Position
Date: December 4, 2012, 5:22 PM
To: Edward Simpson edwardfsimpson@gmail.com

Dear Ed,

This is to confirm our agreement that I am willing to sell my entire position in ENDCO, including my stock and my $200,000 convertible note with all its accumulated interest and rights, for a price of $300,000.  My one condition is that I want to see this transaction competed before the end of 2012.

Yours truly,

Gary E. Frashier

Sent from my iPhone



## Endco Stock

**Edward Simpson** <edwardfsimpson@gmail.com>
To: Kent Linduff <klinduff@employernow.com>

Mon, Dec 24, 2012 at 11:28 AM

Kent Linduff
Chief Exexutive Officer
Endco

Kent

Please provide your consent to the assignment of the attached
Convertible Note Agreement dated January 25, 2010 between Endco and
Gary E. Frashier to Edward F. Simpson or his assigns further detailed
as follows:

1. $200,000 note convertible to Endco stock at $5.00 per share
   40,000 shares

2. An option to purchase 20,000 shares of Endco stock at $5.00
   per share valid for a ten (10) year period from January 25, 2010.

Please further provide your consent to the transfer of stock owner
ship in Endco in the amount of 31,579 shares
presently owned and held by Gary E. Frashier to Edward F. Simpson or
his assigns.

Thank you for your cooperation

Ed

---

**Kent Linduff** <klinduff@employernow.com>
Reply-To: Kent Linduff <klinduff@employernow.com>
To: Edward Simpson <edwardfsimpson@gmail.com>
Cc: Linda Linduff <llinduff@employernow.com>

Mon, Dec 24, 2012 at 11:46 AM

Ed,
Please accept this email as authorization to proceed.
Best Regards,
Kent Linduff

CEO
ENDCO Corporation
The materials in this e-mail are private and may contain Protected Health Information.
If you are not the intended recipient be advised that any unauthorized use,
disclosure, copying, distribution or the taking of any action in reliance on the contents
of this information is strictly prohibited. If you have received this email in error, please immediately notify the sender by
return e-mail.

## ASSIGNMENT OF INTEREST AND STOCK PURCHASE AGREEMENT

**This Assignment and Stock Purchase Agreement** (the "Assignment") is made and entered into this 6th day of December , 2009 (the "Execution Date"), **BETWEEN** Kent Linduff & Linda Linduff, majority shareholders of EmployerNow Development Company Inc. (ENDCO) (the "Assignor") and Gary E. Frashier (the "Assignee").

**BACKGROUND:**

A. Assignor holds a combined 100 percent (100%) ownership interest (the "Interest") in ENDCO (the "Company"), a Corporation previously established on May 14, 2008, for the purpose of developing and providing a technology platform to provide a virtual transactional media for all users, and to manage and commercialize the technology and business of ENDCO.

B. Assignor desires to assign and sell, in a private sale a portion of the Interest (a total of 631,590 shares (Units) of Common Stock issued out of 1,000,000 Units authorized), a Five Percent (5%) interest (31,579 Units) in ENDCO, to the Assignee and the Assignee desires to acquire such Interest from the Assignor.

C. The interest to be assigned will not be limited to the transfer of rights in distribution and will include the immediate transfer of status of Five Percent Shareholder in ENDCO to the Assignee.

D. **IN CONSIDERATION OF** and as a condition of the parties entering into this Assignment and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Assignment agree as follows:

### SALE AND PURCHASE

1. By this Assignment the Assignor assigns and sells a portion of its rights, interests, title and benefits in ENDCO to the Assignee. The Assignee will be entitled to share in profits and losses and to receive such allocation of income, gain, loss, deduction or credit or similar item of the company, according to the Federal Tax Code, to which the Assignor was entitled.

### CONSIDERATION

2. As full consideration for the assignment and purchase of the Interest, the Assignee and the Assignor have agreed on the following consideration:  The Assignee will pay $157,895.00 as partial payment for the 31,579 Units at $5.00 per Unit.  In addition and as a part of the consideration, the Parties have also agreed that the Assignee, Gary E. Frashier, will serve as a member of the ENDCO Board of Directors.   In this capacity, Mr. Frashier will advise the Company and Management on strategy; financial aspects; and on various business matters and he will also work closely with the outside

accountants and legal counsels as needed.  He may also represent ENDCO from time to time as may be requested by the CEO and Chairman of the Board of ENDCO.
The Parties have also agreed that the Assignee, Mr. Frashier, will also receive a Board Fee of $10,000.00 per month initially.  This fee may be adjusted by mutual agreement of the Parties at any time.  He may also receive future stock options or supplementary fees at the discretion of the Board of ENDCO.

## CLOSING

3.  The Closing of the purchase and sale of the Interest (the "Closing") will take place on _Dec. 6_ , 2009 (the "Closing Date") at the offices of the Assignor or at such other time and place as the Assignor and the Assignee mutually agree.

### REPRESENTATIONS AND WARRANTIES OF THE ASSIGNOR

4.  The Assignor warrants that the Assignor has a majority interest in the company and that the Assignor has the legal right to execute and perform an assignment of the Interest exclusive of the Assignor's status as a Shareholder.

5.  The Assignor warrants that the Interest is free and clear of all liens, encumberances, restrictions and claims.

6.  The Assignor warrants that the Assignor is not in any way in default of any of the expressed or implied terms and conditions of the Sales Agreement.  The Assignor warrants that the Assignor is not bound by any other contractual agreement or legal requirement that would be violated by this Assignment.

7.  The Assignor warrants that no other consent is required from any third party or government entity authorizing this Assignment.

### ASSIGNEE'S OBLIGATIONS

8.  On Closing of this Assignment, the Assignee will observe and perform any and all terms and conditions of the Agreement, relating to the newly acquired rights that are binding on the Assignor.

### TRANSITIONAL RIGHTS AND OBLIGATIONS

9.  To the full extent permitted by the Agreement, the income, rights, benefits, obligations and liabilities of the Interest being transferred under this Assignment will belong to the Assignor before the Closing and will transfer to the Assignee after the Closing.

Page 2 -  Private Sale of Stock

## GOVERNING LAW

10. The Assignor and the Assignee submit to the jurisdiction of the courts of the State of Texas for enforcement of this Assignment or any arbitration award or decision arising from this Assignment. The Assignment will be enforced or construed according to the laws of the State of Texas.

11. Time is of the essence in this Assignment.

12. This Assignment may be executed in counterparts, Facsimile signatures are binding and are considered to be original signatures.

13. All warranties and representations of the Assignor and the Assignee connected with this Assignment will survive the Closing.

14. This Assignment will not be assigned either in whole or in part by any party to this Assignment with out the written consent of the other party, except to a family-controlled trust or partnership or other immediate family members of the Assignee or Assignor.

15. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Assignment. Words in the singular mean and include the plural and vice versa. Words in the masculine gender include the feminine gender and vice versa.

16. If any term, covenant, condition or provision of this Assignment is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Assignment will in no way be affected, impaired or invalidated as a result.

17. This Assignment contains the entire agreement between the parties. All negotiations and understandings have been included in this Assignment. Statements or representations which may have been made by an party to this Assignment in the negotiation stages of this Assignment may in some way be inconsistent with this final written Assignment. All such statements are declared to be of no value in this Assignment. Only the written terms of this Assignment will bind the parties.

18. This assignment and the terms and conditions contained in this Assignment apply to and are binding upon the Assignor, the Assignee and their respective successors, assigns, executors, administrators, beneficiaries and representatives.

Page 3 - Private Sale of Stock

19. Any notices or delivery required here will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the parties at the addresses contained in this Assignment or as the parties may later designate in writing.

20. All of the rights, remedies and benefits provided by this Assignment will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law.

**IN WITNESS THEREOF** the Assignor and the Assignee have duly affixed their signatures under hand and seal on this ___6th___ day of _December_, 2009.

ASSIGNOR:

Kent Linduff, ENDCO, Inc.

Linda Linduff, ENDCO, Inc.

Assignee:

Gary E. Frashier

Page 4  -  Private sale of stock

**<u>Exhibit E</u>**

**March 31, 2013 Wire**

Sovereign Bank - Wire Transfer Agreement

Page 1 of 2

[x] Sovereign Logo

## Wire Transfer Agreement

Customer desires to arrange with Sovereign Bank, N.A. for the transfer of the Customer's funds to the Customer's own accounts and to the accounts of third parties which Sovereign Bank, N.A. is willing to do under the terms and conditions set forth below.

Application Number:_____

Date:   3/21/2013

### Customer Information

| | |
|---|---|
| **Name:**   JOAN SIMPSON | **Originating Bank:**   Sovereign Bank, N.A. (3037) |
| **Address:**   10 AUTUMN WAY | **Account Number:**   ▮▮▮▮▮ |
| **City:**   BOURNE | **PO Box:**   1129 |
| **State:**   MA | **Telephone Number:**   (508)833-9060 |
| **Zip:**   02532 | |

### Wire Information

**U.S. Amount:**   $250,000.00
**Currency:**   USD

### Beneficiary Information

| | |
|---|---|
| **Name:**   FIRST CLEARING LLC | **Account Number:**   ▮▮▮▮ |
| **Address:**   1 NORTH JEFFERSON | **Reference:**   FURTHER CREDIT TO: GARY E FRASHIER, ACCOUNT ▮▮▮▮ |
| **City:**   ST LOUIS | |
| **State:**   MO | |
| **Zip:**   63103 | |

### Beneficiary Bank Information

| | |
|---|---|
| **Name:**   WELLS FARGO BANK | **ABA Number:**   ▮▮▮▮ |
| **Address:** | |
| **City:** | |
| **State:** | |
| **Zip:** | **Other Code:** |

### CBO/Department Information

| | |
|---|---|
| **CBO/ Department Name:**   SANDWICH | **CBO/Department Cost Center:**   553 |
| **Team Member Name:**   Elsa M. Vieira | **Telephone Number:**   (508)833-6900 |
| **Team Member Login:**   n609356 | **Authorized Team Member Number:**   505975 |

### Customer Identification

| | |
|---|---|
| **Primary:** MA DL # ▮▮▮▮ EXP 08/07/2014 | **Secondary:**   MC EXP 11/2016 |
| | **Date of Birth:** |

The Customer affirms that he/she has fully read and agrees to the terms of this Agreement including, but not limited to, the Terms and Conditions set forth on the reverse hereof. If the undersigned is executing this Agreement on behalf of the Customer, the undersigned represents and warrants to Sovereign Bank, N.A. that this Agreement is authorized by the Customer.

**Customer's Signature:**_____   **Print Name:**_____

**Title(if applicable):**_____   **Team Member Signature:**_____

**<u>Exhibit F</u>**

**Settlement Agreement**

NO. 14-526

| MICHAEL L. WILLIAMS, WILLIAM S. HARTE, AND REX A. SPRUNGER | § § § | IN THE DISTRICT COURT |
|---|---|---|
| V. | § § | KENDALL COUNTY, TEXAS |
| KENT D. LINDUFF, LINDA P. LINDUFF, EDWARD F. SIMPSON AND JOAN T. SIMPSON | § § § § | 216TH JUDICIAL DISTRICT |

## SETTLEMENT AGREEMENT & MUTUAL RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL RELEASE (hereinafter "Agreement") relates to the above-entitled case for any and all claims that have been pled or which could have been pled and is made on the Effective Date, as defined *infra*, between Michael L. Williams, William S. Harte and Rex A. Sprunger (referred to herein as "Plaintiffs") and Kent D. Linduff, Linda P. Linduff, Edward F. Simpson and Joan T. Simpson (referred to herein as "Defendants"). Plaintiffs and Defendants will be referred to herein collectively as the "Parties."

### I.

### RECITALS

WHEREAS, on or about April 22, 2014, the Parties entered into and executed (1) a Full and Final Settlement and Release Agreement and Confidentiality Agreement (the "2014 Settlement Agreement"), (2) a Promissory Note, (3) a Security Agreement, and (4) an Escrow Agreement related to Defendants' agreement to purchase of all of the shares in EmployerNow Development Company, LLC owned by Plaintiffs for the price of $1,163,250.70.

WHEREAS, Defendants made an initial payment of $310,000.00 to Plaintiffs at the time the 2014 Settlement Agreement was executed and the remaining $853,250.70 was to be paid pursuant to the terms of the Promissory Note and secured pursuant to the terms of the Security Agreement.

WHEREAS, Defendants defaulted on the Promissory Note by failing to make the first payment due thereunder.

WHEREAS, on October 22, 2014, Plaintiffs allege they gave timely and proper notice to Defendants of Defendants' default on the Promissory Note and Plaintiffs' intent to accelerate the balance owed on the Promissory Note.

WHEREAS, despite notice, Defendants failed to make any of the payments owed on the Promissory Note.

WHEREAS, this matter arose when Plaintiffs filed suit against Defendants alleging that Plaintiffs failed to pay a Promissory Note; these allegations and others are detailed in Plaintiffs' pleadings and are fully incorporated herein by reference in the above-styled and numbered cause (the "Lawsuit").

WHEREAS, the Parties desire to settle all of the matters of fact and things in dispute and buy peace without admitting or conceding any matter.

NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING, AND IN CONSIDERATION OF THE COVENANTS CONTAINED HEREIN, THE PARTIES AGREE AS FOLLOWS:

## II.

## DEFINITIONS

*"Claims"* shall mean any and all claims, demands, actions, counts, rights, causes of action, costs, expenses, attorney fees, liabilities of any kind or nature whatsoever, known or unknown, at law or in equity, in tort, contract or otherwise, which a releasing party may have, or have had against the party being released, originating, in whole or in part, up to and including the Effective Date and specifically including, without limitation, all claims brought or that could have been brought in the Lawsuit. Claims shall further include any and all claims, demands, actions, causes of action, costs, expenses and liabilities whatsoever, known or unknown, at law or in equity, in tort, contract or otherwise, arising out of the various transactions or proposed transactions by, between or among any of the parties, for or because of any matter or thing done, omitted, or suffered to be done or omitted, and whether based on tort, contract, statute, expressed or implied indemnification, contribution, or other legal theories of recovery.

*"Effective Date"* shall mean ___June 2, 2015___

*"Plaintiffs"* shall mean Michael L. Williams, William S. Harte and Rex A. Sprunger. Plaintiffs are represented in this matter by the law firm of Jackson Walker L.L.P.

*"Defendants"* shall mean Kent D. Linduff, Linda P. Linduff, Edward F. Simpson and Joan T. Simpson. Kent D. Linduff and Linda P. Linduff are represented by Matthew W. Childs, *Esquire.* Edward F. Simpson and Joan T. Simpson are represented by Joe M. Davis, *Esquire.*

*"Lawsuit"* shall mean Cause No. 14-526 styled *Michael L. Williams, William S. Harte and Rex A. Sprunger v. Kent D. Linduff, Linda P. Linduff, Edward F. Simpson and Joan T. Simpson,* in the 216th Judicial District Court of Kendall County, Texas.

*"Parties"* shall mean Plaintiffs and Defendants, collectively, and *"Party"* shall mean Plaintiffs or Defendants as the context requires.

*"Other Parties"* shall mean ENDCO, LLC, Endco LLC Group of Companies, Universal Worksite Benefits, LLC, The Linduff Agency, Inc., EmployerNow Management Group, Inc. EmployerNow, Inc., EmployerNow Development Company, LLC.

## III.

## OBLIGATIONS & CONSIDERATION

**A.    SETTLEMENT FUNDS.**  In full settlement of the causes of action asserted in the Lawsuit, Defendants agree to pay to Plaintiffs in immediately available funds the sum of $1,000,000.00 (the "Settlement Amount") no later than ~~JUNE 2~~, 2015.  Payment must be timely sent by wire transfer to Broadway Bank, Boerne, Texas, ABA Routing Number ████████, Account No. ███████ in the name of "Michael L. Williams or Pamela W. Williams," or any other place that Plaintiffs may designate in writing.

**B.    DEFAULT.**  In the event that Defendants default by failing to timely pay the Settlement Amount, or any part thereof, the entire balance of the Settlement Amount shall bear interest from the date of default until paid at the rate of (i) eighteen percent (18%) per annum or (ii) the maximum rate allowable by applicable law, whichever is lower, and Plaintiffs may pursue any other remedies available to them at law or in equity including those available pursuant to this Agreement, the 2014 Settlement Agreement, the Promissory Note, the Escrow Agreement, and/or the Security Agreement.

**C.    DISMISSAL OF LAWSUIT, RELEASE OF SECURITY INTEREST, AND RELEASE OF COLLATERAL.**  Upon timely receipt of the Settlement Amount, Plaintiffs shall (1) dismiss the Lawsuit with prejudice by executing the Notice of Nonsuit with Prejudice attached hereto as Exhibit "A" and filing it with the Kendall County District Clerk or taking whatever other action may be necessary to dismiss the Lawsuit with prejudice, (2) release their security interest in the collateral identified in the Security Agreement, and (3) instruct attorney Robert J. Ogle to disburse to Defendants the certificates held by him in accordance with the Escrow Agreement.

## IV.

## RELEASES

**D.    RELEASE OF PLAINTIFFS.**  Effective immediately, Defendants, on behalf of themselves and their predecessors, successors, assigns, and legal representatives, do hereby release and forever discharge Plaintiffs and their spouses, agents, employees, attorneys, predecessors, successors, and assigns from all Claims.

**E.    RELEASE BY SIMPSONS IN FAVOR OF LINDUFFS AND OTHER PARTIES.**  Defendants, Edward F. Simpson and Joan T. Simspon on behalf of themselves and their predecessors, successors, assigns, and legal representatives, do hereby fully release and forever discharge Defendants, Kent D. Linduff and Linda P. Linduff and Other Parties, their agents, employees, attorneys, predecessors, successors, and all assigns from any Claims that they may have pled or could have been pled against Defendants, Kent D. Linduff and Linda P. Linduff or Other Parties relating to the subject matter of this Lawsuit or any other Claims that Defendants, Edward F. Simpson and Joan T. Simspon would or may have against Other Parties in the future.

-3-

**F.    RELEASE OF DEFENDANTS.** Effective upon timely receipt of the Settlement Amount, Plaintiffs and their predecessors, successors, assigns, and legal representatives do hereby release and forever discharge Defendants and Other Parties, their agents, employees, attorneys, predecessors, successors, and assigns from all Claims. Nothing herein shall release Defendants from their obligations as set forth in this Agreement.

V.

<u>GENERAL TERMS</u>

**G.    ADVICE OF COUNSEL.** Each party acknowledges that it has had the opportunity to be represented by counsel and has read and understood the effects of this Agreement. Each party states that he, she, or it executes this Agreement of his, her, or its own free will and accord, for the purposes and the consideration set forth in this Agreement.

**H.    REPRESENTATION OF FULL UNDERSTANDING.** The Parties represent and warrant that they have had an adequate opportunity to review all aspects of this Agreement, that they understand all the provisions of the Agreement, and that they voluntarily accept its terms. Each of the Parties acknowledges that he, she, or it has had an opportunity to review and negotiate this Agreement, and this Agreement shall not be construed more strictly against one party as drafter.

**I.    MODIFICATION OF THIS AGREEMENT.** This Agreement constitutes the entire agreement and understanding between the Parties hereto and shall not be modified or altered except by written instrument duly executed by all Parties hereto.

**J.    COUNTERPARTS.** This Agreement may be executed in any number of counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. In the event that this Agreement is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the Party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

**K.    SUCCESSORS & ASSIGNS.** This Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective past, present and future parent entities, affiliates, subsidiaries, shareholders, officers, directors, partners, partnerships, fiduciaries, trustees, employees, agents, insurers, indemnitors, predecessors, successors, assigns, attorneys, heirs, beneficiaries, executors, administrators, other representatives, and any and all other persons claiming in whole or in part by, through or under them.

**L.    DUE AUTHORIZATION.** Each Party signing this Agreement represents and warrants that they have the authority to sign this Agreement on behalf of the Party which they are signing and that they are fully competent to do so.

**M.    NO ASSIGNMENT OF CLAIMS.** The Parties represent, covenant and warrant that no Claim they now have or may have had in the past against the other or their respective

-4-

Affiliates or owners, managers, officers, directors, employees, agents, attorneys, predecessors, successors, or assigns has previously been conveyed, assigned or transferred in whole or in part to any third party.

**N.    NO ADMISSIONS.**  This Agreement represents the compromise of disputed claims by and between the Parties hereto and, except as stated herein, is not to be construed, by the Parties hereto or by any third parties, as an admission, direct or indirect, of liability or a declaration against any interest of the Parties hereto in connection with such actions.

**O.    CONTRACTUAL OBLIGATIONS.**  It is expressly understood and agreed that the terms herein are contractual and are not merely recitals.  The Parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant is held unreasonable or unenforceable by an adjudicating entity having valid jurisdiction in any final judgment, the Parties each expressly agree to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law.  **THE CONSIDERATION STATED HEREIN IS THE FULL CONSIDERATION UNDER THIS RELEASE AND IS CONTRACTUAL AND NOT MERELY A RECITAL.**

**P.    WAIVER.**  Failure, delay, or omission of a party to exercise any right, power or option or to insist on strict compliance with the terms hereof will not impair those rights, nor will it comprise a waiver with respect to any other or subsequent breach, nor will it constitute a renunciation of those rights.

**Q.    ATTORNEYS' FEES.**  If Plaintiffs successfully bring any action for breach of this Agreement, Plaintiffs shall be entitled to its reasonable attorneys' fees and expenses.

**R.    ENTIRE AGREEMENT.**  This Agreement (including the documents referred to herein) constitutes the entire agreement among the Parties and supersedes any prior oral agreements or oral representations by or among the Parties to the extent they relate in any way to the subject matter hereof.  This Agreement may be amended or modified only by an agreement in writing executed in the same manner as this Agreement.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, and assigns.

**S.    SEVERABILITY.**  If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.  Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in its terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

**T.    GOVERNING LAW & VENUE.**  The law governing this Agreement shall be that of the State of Texas, as from time to time amended.  The Parties further agree that the place

for payment of the Settlement Amount is Kendall County, Texas and that venue for any suit in connection with this Agreement shall be in Kendall County, Texas.

U.   **FURTHER ASSURANCES.**  The Parties shall cooperate reasonably with each other and their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall execute and deliver to each other such other documents and do such other acts and things, all as the other party may reasonably request, for the purpose of carrying out the intent of this Agreement.

<u>**AGREED TO BY**</u>:

Michael L. Williams

Executed: May ___, 2015

_____

Williams S. Harte

Executed: May ___, 2015

_____

Rex A. Sprunger

Executed: May ___, 2015

_____

Kent D. Linduff

Executed: May ___, 2015

_____

Linda P. Linduff

Executed: May ___, 2015

_____

Edward F. Simpson

Executed: May 30, 2015

Joan T. Simpson

Executed: May 30, 2015

-6-

MAY-28-2015  12:27        TEKELL BOOK LLP                    713 655 7727    P.08/11

for payment of the Settlement Amount is Kendall County, Texas and that venue for any suit in connection with this Agreement shall be in Kendall County, Texas.

     **U.**    **FURTHER ASSURANCES.**  The Parties shall cooperate reasonably with each other and their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall execute and deliver to each other such other documents and do such other acts and things, all as the other party may reasonably request, for the purpose of carrying out the intent of this Agreement.

**AGREED TO BY:**

Michael L. Williams

                                                Executed: May \_\_, 2015

_____

Williams S. Harte

                                                Executed: May \_\_, 2015

_____

Rex A. Sprunger

                                                Executed: May \_\_, 2015

_____

Kent D. Linduff

                                                Executed: May 30, 2015

_____

Linda P. Linduff

                                                Executed: May 31, 2015

_____

Edward F. Simpson

                                                Executed: May \_\_, 2015

_____

Joan T. Simpson

                                                Executed: May \_\_, 2015

_____

13409644v.1 144926/00001

for payment of the Settlement Amount is Kendall County, Texas and that venue for any suit in connection with this Agreement shall be in Kendall County, Texas.

U.    **FURTHER ASSURANCES.**  The Parties shall cooperate reasonably with each other and their respective representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall execute and deliver to each other such other documents and do such other acts and things, all as the other party may reasonably request, for the purpose of carrying out the intent of this Agreement.

**AGREED TO BY:**

Michael L. Williams

_____                    Executed: June 1, 2015


Williams S. Harte

_____                    Executed: June 1. 2015


Rex A. Sprunger

_____                    Executed: June 1, 2015


Kent D. Linduff

_____                    Executed: June __, 2015


Linda P. Linduff

_____                    Executed: June __, 2015


Edward F. Simpson

_____                    Executed: June __, 2015


Joan T. Simpson

_____                    Executed: June __, 2015


-6-

## **Exhibit G**

**Records Requests to ENDCO and Cartera Group, LLC**



Steve A. Ramon
(210) 978-7747 (Direct Dial)
(210) 242-4634 (Direct Fax)
sramon@jw.com

March 16, 2018

EmployerNow Development Company, LLC
C/O Robert J. Ogle (Registered Agent)
1 FM 3351 South, Suite 135
Boerne, TX 78006

Re:   Texas Business Organizations Code §§ 3.153 and 101.502 Request to Examine Books and Records of EmployerNow Development Company, LLC ("ENDCO")

Mr. Ogle:

Our clients Edward F. Simpson (individually and as Trustee of the JTS Irrevocable Investment Nominee Trust), and Joan T. Simpson (individually and Trustee of the JTS Investment Nominee Trust) (collectively the "Simpson Parties") request to examine the books and records of ENDCO pursuant to Tex. Bus. Orgs. Code §§ 3.153 and 101.502. Specifically, within five (5) days from today's date, please make the following books and records available for Ridout Barrett's examination and copying at 1 FM 3351 South, Suite 135, Boerne, TX 78006.

1.   All books and records of ENDCO from March 1, 2010 to present, including but not limited to bank statements (including copies of the front and the back of the cancelled checks), QuickBooks reports and backup copy with the user name and password (or similar accounting software if ENDCO use something other than QuickBooks), financial statements, cash flow statements, balance sheets, profit and loss statements, detailed general ledgers, and trial balances;

2.   All audited, reviewed and compiled financial statements of ENDCO from March 1, 2010 to present, including but not limited to the engagement letters, management representation letters and all work product(s) issued by the accounting firm(s);

3.   Minutes of the proceedings of the owners or members or governing authority of ENDCO and any committees of the owners or members of ENDCO;

4.   A current record of the name and mailing address of each owner or member of the filing entity;

5.   A current list that states the percentage or other interest in ENDCO owned by each member;

6.    A current list that states if one or more classes or groups of membership interests are established in or under the certificate of formation or company agreement, the names of the members of each specified class or group;

7.    A copy of ENDCO's federal, state, and local tax information or income tax returns for each of the six preceding tax years;

8.    A copy of ENDCO's certificate of formation, including any amendments to or restatements of the certificate of formation;

9.    A copy of the company agreement, including any amendments to or restatements of the company agreement;

10.    An executed copy of any powers of attorney;

11.    A copy of any document that establishes a class or group of members of ENDCO as provided by the company agreement;

12.    A written statement of the amount of a cash contribution and a description and statement of the agreed value of any other contribution made or agreed to be made by each member;

13.    A written statement of the dates any additional contributions are to be made by a member;

14.    A written statement of any event the occurrence of which requires a member to make additional contributions;

15.    A written statement of any event the occurrence of which requires the winding up of the company; and

16.    A written statement of the date each member became a member of ENDCO.

The purpose of this request is to: ascertain the financial condition of ENDCO, determine the value of ENDCO shares, and to investigate ENDCO management, waste of corporate assets, and self-dealing.

Sincerely,
For and Behalf of the Simpson Parties,

Steve A. Ramon

SAR/ecg


JW | Jackson Walker LLP

Steve A. Ramon
(210) 978-7747 (Direct Dial)
(210) 242-4634 (Direct Fax)
sramon@jw.com

March 16, 2018

The Cartera Group, LLC
C/O Kent D. Linduff (Registered Agent)
1 FM 3351 South, Suite 135
Boerne, TX 78006

Re:   Texas Business Organizations Code §§ 3.153 and 101.502 Request to Examine
Books and Records of The Cartera Group, LLC ("CARTERA")

Mr. Linduff:

Our clients Edward F. Simpson (individually and as Trustee of the JTS Irrevocable
Investment Nominee Trust), and Joan T. Simpson (individually and Trustee of the JTS Investment
Nominee Trust) (collectively the "Simpson Parties") request to examine the books and records of
CARTERA pursuant to TEX. BUS. ORGS. CODE §§ 3.153 and 101.502. Specifically, within five (5)
days from today's date, please make the following books and records available for Ridout Barrett's
examination and copying at 1 FM 3351 South, Suite 135, Boerne, TX 78006.

1.   All books and records of CARTERA from March 1, 2010 to present, including but
not limited to bank statements (including copies of the front and back of the
cancelled checks), QuickBooks reports and backup copy with the user name and
password (or similar accounting software if the CARTERA uses something other
than QuickBooks), financial statements, cash flow statements, balance sheets,
profit and loss statements, detailed general ledgers, and trial balances;

2.   All audited, reviewed and compiled financial statements of CATERA from March
1, 2010 to present, including but not limited to the engagement letters, management
representation letters and all work product(s) issued by the accounting firm(s).

3.   Minutes of the proceedings of the owners or members or governing authority of
CARTERA and any committees of the owners or members of CARTERA;

4.   A current record of the name and mailing address of each owner or member of the
filing entity;

5.   A current list that states the percentage or other interest in CARTERA owned by
each member;

6.   A current list that states if one or more classes or groups of membership interests
are established in or under the certificate of formation or company agreement, the
names of the members of each specified class or group;

March 16, 2018
Page 2

7.      A copy of CARTERA's federal, state, and local tax information or income tax returns for each of the six preceding tax years;

8.      A copy of CARTERA's certificate of formation, including any amendments to or restatements of the certificate of formation;

9.      A copy of the company agreement, including any amendments to or restatements of the company agreement;

10.     An executed copy of any powers of attorney;

11.     A copy of any document that establishes a class or group of members of CARTERA as provided by the company agreement;

12.     A written statement of the amount of a cash contribution and a description and statement of the agreed value of any other contribution made or agreed to be made by each member;

13.     A written statement of the dates any additional contributions are to be made by a member;

14.     A written statement of any event the occurrence of which requires a member to make additional contributions;

15.     A written statement of any event the occurrence of which requires the winding up of the company; and

16.     A written statement of the date each member became a member of CARTERA.

The purpose of this request is to: ascertain the financial condition of CARTERA, determine the value of CARTERA shares, and to investigate CARTERA management, waste of corporate assets, and self-dealing.

Sincerely,
For and Behalf of the Simpson Parties,

Steve A. Ramon

SAR/ecg

20231362v.1 151544/00001

## **Exhibit H**

**March 23, 2018 Correspondence**

March 23, 2018

Mr. Steve Ramon

Ref: Your letter dated March 16th Ed Simpson

Sir,

I have no stock/shares nor interest in any of the companies you reference. As your client and I both signed release agreements relinquishing any and all claims of ownership.

I was not aware the SoS had me as the agent of record. I will address that.

Best Regards,

Kent Linduff

**<u>Exhibit I</u>**

**Stock Certificates in ENDCO and Cartera Group, LLC**

24



The Cartera Group Incorporated

Incorporated under the laws of the State of Texas

Total Authorized Issue
600,000 Shares Without Par Value
Common Stock

20,000

See Reverse for Certain Definitions

11

This is to certify that ___ Joan T. Simpson, Trustee ___

___ FIS Investment Nominee Trust ___ is the owner of

___ Twenty Thousand ___ fully paid and

non-assessable shares of the above Corporation transferable only on the books of the Corporation by
the holder thereof in person or by a duly authorized Attorney upon surrender of this Certificate
properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated   June 15, 2011

Secretary/Treasurer

President

CORPKIT, NEW YORK



# The Cartera Group Incorporated

Incorporated under the laws of the State of Texas

Total Authorized Issue
600,000 Shares Without Par Value
Common Stock

20,000

See Reverse for Certain Definitions

13

This is to certify that    ITS Irrevocable Investment Nominee Trust

Edward F. Simpson, Trustee

Twenty Thousand    is the owner of

non-assessable shares of the above Corporation transferable only on the books of the Corporation by
the holder thereof in person or by a duly authorized Attorney upon surrender of this Certificate
properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated   December 30, 2012

Secretary/Treasurer

President

CORPKIT, NEW YORK

10,000

See Reverse for Certain Definitions

Incorporated under the laws of the State of Texas

# EmployerNow Development Company

Total Authorized Issue
1,000,000 Shares Without Par Value
Common Stock

9

This is to certify that

**Joan T. Simpson, Trustee**

**JTS Investment Nominee Trust**

is the owner of

**Ten Thousand**

fully paid and

non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder thereof in person or by a duly authorized Attorney upon surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated **February 15, 2011**

Secretary/Treasurer

President

CORPKIT, NEW YORK

30,000

See Reverse for Certain Definitions

8

Incorporated under the laws of the State of Texas

# EmployerNow Development Company

Total Authorized Issue
1,000,000 Shares Without Par Value
Common Stock

This is to certify that

## Joan T. Simpson, Trustee
## JTS Investment Nominee Trust

_____ is the owner of _____

Thirty Thousand _____ fully paid and

non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder thereof in person or by a duly authorized Attorney upon surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated February 15, 2011

Secretary/Treasurer

President

CORP107, NEW YORK



Incorporated under the laws of the State of Texas

# Employer Now Development Company

Total Authorized Issue
1000,000 Shares Without Par Value
Common Stock

10,000

See Reverse for
Certain Definitions

7

This is to certify that **Joan T. Simpson** is the owner of

_Ten Thousand_ fully paid and

non-assessable shares of the above Corporation transferable only on the books of the Corporation by

the holder thereof in person or by a duly authorized Attorney upon surrender of this Certificate

properly endorsed.

**Witness,** the seal of the Corporation and the signatures of its duly authorized officers.

**Dated** **January 31, 2011**

_____  _____
Secretary/Treasurer                        President



Incorporated under the laws of the State of Texas

# EmployerNow Development Company

Total Authorized Issue
1,000,000 Shares Without Par Value
Common Stock

30,000

See Reverse for
Certain Definitions

6

This is to certify that

*Joan T. Simpson*

is the owner of

*thirty thousand* _____ fully paid and

non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder thereof in person or by a duly authorized Attorney upon surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated July 6, 2010

Secretary/Treasurer

President

CORPKIT, NEW YORK